UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BECKY S. LEICHTMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 3:23-CV-997-HAB |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Becky S. Leichtman's ("Leichtman") appeal of the Social Security Administration's Decision dated May 2, 2023 (the "Decision") which found that Leichtman was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

**ANALYSIS**

**A.  Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Leichtman protectively filed an application for benefits on July 28, 2021, alleging disability beginning April 9, 2021. The claim was denied initially and on reconsideration. On March 23, 2023, the parties participated in a telephone hearing before an ALJ. The ALJ issued an unfavorable decision on May 2, 2023. (R. 10-24). This appeal followed.

## C. The ALJ's Decision

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Leichtman did not engage in substantial gainful activity since April 9, 2021, the alleged onset date. (R. 12). At step two, the ALJ determined that Leichtman had the severe impairment of COVID infection on two occasions. (R. 13). The ALJ

further found that Leichtman had the following non-severe impairments: reflux without esophagitis, controlled with medication; mild hand tremor; anxiety; and depression. (R. 13).

At step three, the ALJ found that Leichtman did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)". (R. 16). At step four, the ALJ found that Leichtman had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except: she can occasionally climb stairs or ramps, stoop, kneel, crouch, or crawl; can never climb ladders, ropes or scaffolds, or balance, as that term is used vocationally. Occasional exposure to fumes, dusts, odors, gases, and poor ventilation.

(R. 16).

Also at step four, the ALJ found that Leichtman is capable of performing past relevant work as an accounts payable clerk. (R. 23). Thus, the ALJ ruled that Leichtman was not disabled, as defined in the Social Security Act. (R. 24).

   1. **The ALJ's Evaluation of the Medical Opinion Evidence**

Leichtman argues that the ALJ committed reversible error by inadequately evaluating the medical opinion evidence. An ALJ must consider the persuasiveness of any medical opinions using several factors, including the supportability and consistency of the opinion, the existence and nature of any treating or examining relationship, any relevant specialization of the medical source, the medical source's familiarity with the other evidence in the claim, and the medical source's understanding of the disability program's policies and evidentiary requirements. 20 CFR 404.1520c(a), (c)(1)-(5). The most important factors are supportability and consistency. *Id*. at (b)(2). An ALJ must explain how she considered the supportability and consistency factors in the decision. *Id*. "Supportability" refers to how "relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical opinion(s)." *Id*. at(c)(1). "Consistency" refers to how aligned a medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at (c)(2). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

In the present case, the ALJ had several medical opinions to consider: those of the State agency consultants, the consultative examiners, and Leichtman's primary care physician. Each will be discussed below

   a. **State Agency Physical Consultants' Opinion**

At the initial level, the State agency consultants were unable to assess Leichtman's claim because she did not return forms to the agency. (R. 21, 63). At the reconsideration level, State agency physician Dr. J.V. Corcoran, M.D., reviewed Leichtman's medical records and concluded that she could perform a reduced range of light work with postural limitations. (R. 21, 69-70). The ALJ found that Dr. Corcoran's findings were somewhat persuasive, and she provided a detailed discussion of how she evaluated each portion of his opinion as follows:

> The undersigned finds the State agency medical consultant's opinion at reconsideration is somewhat persuasive. Primary care records showed the claimant reporting fatigue and dyspnea on exertion due to long-COVID, but objectively she was consistently observed to be well developed, with normal thyroid, a regular heart rate and rhythm without murmurs, gallops or rubs and she had a normal gait (Exhibits 2F, 4F, 9F, and 10F). The above appears to support the State agency consultant's opinion the claimant can climb ramps and stairs, stoop, kneel and crouch. The effectiveness of the low-dose thyroid medication on improving the claimant's fatigue and the lack of any medication usage for the claimant's dyspnea on exertion also appears consistent with the same (Exhibits 2F, 4F, 9F, and 10F). Consequently, the undersigned finds those parts of the State agency consultant's opinion is persuasive and the residual functional capacity adopts such herein.
>
> Moreover, primary care records signaling the claimant had some brain fog, and at

> times a mild hand tremor in combination with her fatigue and dyspnea on exertion, this appears to support the State agency medical consultant's opinion the claimant can never climb ladders, ropes and scaffolds (Exhibits 2F, 4F, 9F, and 10F). While the claimant alleges dizziness, the medical evidence of record mentions it only as an adverse side effects from a medication, or includes the claimant's specific denials of it, (Exhibit 2F). While she reported of her balance [sic] as not being good in a Function Report in September 2021, (Exhibit 8E), the only mention of this is at an appointment in September 2022, where the claimant mentioned intermittent vertigo, (Exhibit 10F), but no treatment was recommended and there was no mention of it at the ensuing appointment in November 2022, or elsewhere, in the record. Nevertheless, the State agency medical consultant's opinion the claimant cannot climb ladders, ropes or scaffolds would accommodate this, as well as her reports of brain fog and fatigue. (Exhibit 8E and hearing testimony). The undersigned also added a further restriction of never balancing, as that term is used vocationally, to accommodate any potential complaints, and finds that part of the State agency medical consultant's opinion is persuasive as a result and the residual functional capacity adopts such herein too.
>
> Although primary care records noted the claimant's reports of fatigue and dyspnea on exertion due to long-COVID, objectively the claimant was consistently observed to be well developed, with no complaints regarding her knees, she was oriented, with normal thyroid, a regular heart rate and rhythm without murmurs, gallops or rubs and she had a normal gait upon examination at appointments (Exhibits 2F, 4F, 9F, and 10F). The above does not appear to support the State agency consultant's opinion the claimant could never crawl. The claimant's own subjective report as well she was able to shop for clothes and groceries, drive when needed, do laundry, dust, clean the bathroom, and tend to her personal care does not appear consistent with the State agency consultant's opinion regarding crawling either (Exhibit 8E). The undersigned does not find that part of the State agency consultant's opinion persuasive as a result and the residual functional capacity instead finds the claimant can occasionally crawl based upon the foregoing.
>
> Conversely, the combination of the mild brain fog, fatigue, cough, and dyspnea on exertion symptoms reported in the claimant's primary care records appears to support the claimant has greater exertional limitations than contemplated by the State agency medical consultant despite the objective examinations being rather unremarkable (Exhibits 2F, 4F, 9F, and 10F). Greater exertional limitations than contemplated by the State agency consultant also appear to be more consistent with the opinion of the internal medicine consultative examiner who actually had an opportunity to observe the claimant and take note of her functioning (Exhibit 7F). Additionally, the claimant testified she had no dyspnea when seated, (testimony). As such, the undersigned does not find that part of the State agency medical consultant's opinion is persuasive and the residual functional capacity instead finds the claimant limited to work at the sedentary exertional level.

(R. 21-22).

Leichtman claims that the ALJ's analysis does not pass muster, asserting that the ALJ failed to explain how normal examination findings regarding her heart, thyroid, and gait contradicted her complaints of ongoing fatigue and brain fog. However, the ALJ discussed all of the examination findings in the record. Notably, Leichtman does not direct the Court to any evidence that supports her argument. In fact, as the ALJ discussed, although Leichtman complained of brain fog and fatigue, examination results did not reflect any abnormal physical findings. (R. 21-22, 314-15. 317-18. 321-22, 424, 429-30, 472-73, 479-80, 488-89). Additionally, during these examinations, Leichtman consistently reported improvement in her brain fog and fatigue, and the ALJ explicitly noted that low-dose thyroid medication improved Leichtman's symptoms. (R. 18, 315, 424, 429, 479, 482, 485, 488).

In any event, the ALJ did not entirely rely on the objective medical evidence in assessing the persuasiveness of Dr. Corcoran's opinion, she also noted Leichtman's array of activities of daily living, such as performing household chores, attending to personal tasks, and driving a vehicle. (R. 22).

For all of these reasons, this Court finds that the ALJ provided sufficient reasoning for her conclusion that Dr. Corcoran's opinion was somewhat persuasive . Clearly, the ALJ's evaluation went beyond the "minimal articulation" requirement set forth in *Warnell v. O'Malley*. 97 F.4th 1050, 1053 (7th Cir. 2024) (ALJs are subject to "only the most minimal of articulation requirements" and need not "fully summarize the record, or cite support for every proposition or chain of reasoning").

### b. State Agency Psychological Consultants' Opinions

State agency psychologist Dr. J. Gange, Ph.D., reviewed the record, including a consultative examination from Dr. Amanda Mayle, Psy.D. (R. 15, 69-69, 446-51). Dr. Gange opined that

Leichtman had a mild limitation in all of the Paragraph B areas of functioning, including understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 15, 68). Dr. Gange noted that Leichtman had not received mental heath treatment, and that her mental health medication was obtained from her primary care physician. Dr. Gange further noted that Leichtman was able to maintain her activities of daily living. Thus, Dr. Gange concluded that Leichtman's mental impairments were non-severe. (R. 69).

Leichtman faults the ALJ's analysis of the opinions of Drs. Mayle and Gange, asserting that the ALJ failed to resolve inconsistencies in the evidence and arrived at illogical conclusions. However, the ALJ thoroughly discussed the opinions as follows:

> [T]he claimant attended a psychological consultative examination with Amanda Mayle, Psy.D., in mid-April 2022 (Exhibit 6F). At the appointment, the claimant's mood was depressed and anxious and her affect was flat and tearful, but speech was within normal limits in rate and tone, relevant and coherent, her thought process was within normal limits in tempo and coherent and she was cooperative with the examiner and she was oriented times three (Exhibit 6F). The claimant's recent memory was also marginal, but she was able to good sustain attention [sic], her grasp of similar and difference concepts was also adequate, her immediate memory adequate, her remote memory was adequate and she appeared to have adequate judgment and insight (Exhibit 4F). Additionally, other medical evidence of record from her treating sources described her as oriented, with an appropriate mood and affect, despite the claimant's allegations of anxiety, depression, and insomnia, (Exhibits 2F, 4F, 9F, 10F). Due to her complaints, her treating source referred her to mental health treatment, but the claimant did not pursue that treatment, as noted above. Additionally, the claimant informed her treating source her depression is controlled with the medication, and she was no longer taking the medication for anxiety as of May 2022, (Exhibit 9F) As a result, the undersigned finds the claimant's mental impairments do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe.
>
> \*    \*    \*
>
> The undersigned does not find Dr. Mayle's opinion persuasive since it is based upon only a snapshot of the claimant's functioning during a one-time evaluation and not supported by the longitudinal record. The longitudinal record is more persuasive given the treatment history the claimant has with her regular providers, especially her primary care provider. Primary care records reflected the claimant's depression

> only as mild and controlled, and her anxiety was generally also controlled, while objective examinations consistently displayed normal findings upon psychiatric exam (Exhibits 2F, 4F, 9F, and 10F). As noted above, the claimant's treatment history, as well as her testimony, shows a lack of emergent care, inpatient stays, or treatment on a regular basis with a psychologist, psychiatrist, counselor, or therapist and thus it does not appear consistent with Dr. Mayle's medical source statement. The undersigned does not find Dr. Mayle's opinion is persuasive as a result.
>
> As for the State agency psychological consultants' mental assessments, the initial State agency psychological consultant did not render an opinion due to insufficient evidence (Exhibit 1A). The State agency psychological consultant at reconsideration [Dr. Gange] provided the claimant has no severe medically determinable mental impairment with mild limitations in the "paragraph B" criteria (Exhibit 3A). The undersigned finds the State agency psychological consultant's opinion at reconsideration is persuasive. Mentioned above, primary care records reflected the claimant's depression was mild and controlled and her anxiety was generally controlled while objective examinations consistently displayed normal findings upon psychiatric exam, which appears to support the State agency psychological consultant's opinion the claimant has no severe mental impairment (Exhibits 2F, 4F, 9F, and 10F).
>
> The State agency consultant's opinion also appears consistent with the subjective reports from the claimant and her husband the claimant was able to engage in a relatively normal level of daily activities and social interactions such as tending to her personal care without reminders, preparing simple meals, performing light cleaning, doing laundry, shopping for herself and the grandchildren, managing her finances and talking daily with her children (Exhibits 7E, 8E, and hearing testimony). Consequently, the undersigned finds the State agency psychological consultant's opinion at reconsideration is persuasive and it was considered in finding the claimant has no severe medically determinable mental impairment.

(R. 13, 15).

Although Leichtman believes Dr. Mayle's opinion should have been found more persuasive than Dr. Gange's opinion, this court will not reweigh the evidence. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). As the ALJ reasonably found that Dr. Gange's assessment was consistent with the treatment record, there is no basis for remand on this point.

### c. Dr. Ehmen's Physical Consultative Examination

In April 2022, Leichtman attended a consultative examination with Dr. Scott Ehmen, M.D. Leichtman alleged fatigue, weakness, heartburn, stiffness, memory loss, and depression. (R. 19, 454). However, Dr. Ehmen observed that: Leichtman's lungs and oxygen saturation level were normal; her heart sounds were normal; she had normal range of motion; her gait, strength, and sensation were normal; and she had normal mood, memory, and affect. (R. 19, 456-57). Thus, Dr. Ehmen opined that Leichtman: seemed to communicate effectively; maintained her focus without anxiety; did not seem to have physical limitations despite her fatigue; was able to stand and walk for at least two hours per day but may need to have occasional breaks; was able to lift over 10 pounds occasionally and under 10 pounds frequently; could perform gross and fine motor movements effectively on a sustained basis; was able to walk well; and did not need an assistive device for balance when walking. (R. 20, 456-57). The ALJ found Dr. Ehmen's opinion to be somewhat persuasive, but noted that the longitudinal record is not consistent with his opinion that Leichtman would need occasional breaks at work. The ALJ further found that Dr. Ehmen's opinion that Leichtman is able to perform sedentary work to be supported by the objective examination. (R. 20-21).

Leichtman argues that the ALJ's reasoning and conclusions are erroneous, asserting that her fatigue did not improve. However, the record clearly shows that in her most recent appointments, Leichtman reported that her fatigue was controlled, improved, and manageable. (R. 519, 523). In analyzing whether Leichtman's fatigue was disabling, the ALJ considered Leichtman's ongoing complaints of fatigue, but found that due to improvement, fatigue did not prevent her from performing a reduced range of sedentary work. This is an appropriate analysis by the ALJ and not a basis for remand. *Stuckey v. Sullivan*, 881 F.3d 506, 509 (7th Cir. 1989) (symptoms alone do not

establish disability); *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *4 (7th Cir. Aug. 19, 2021) (the role of the ALJ is to weigh conflicting evidence).

### d. Dr. Bertoncini's Opinion

Dr. Bertoncini was Leichtman's primary care provider. He submitted a medical source statement in March, 2023. (R. 19-20, 567-69). Dr. Bertoncini noted Leichtman's diagnoses of long-COVID, chronic fatigue, anxiety with depression, and that she had a partial response to medication. (R. 565). Dr. Bertoncini opined that Leichtman had a limited but satisfactory ability to deal with normal work stress, interact with the public, and maintain socially appropriate behavior, but seriously limited abilities with regard to most mental abilities needed to do unskilled, semi-skilled, or skilled work, such as maintaining attention for two hours, maintaining regular attendance, and performing at a consistent pace. (R. 19, 566-68). The ALJ found Dr. Bertoncini's opinion to be not persuasive:

> The undersigned does not find Dr. Bertoncini's opinion to be persuasive. Dr. Bertoncini's treatment records regularly provided the claimant's depression was mild and fairly controlled and her anxiety was generally controlled, while objective examinations consistently displayed normal findings upon psychiatric exam (Exhibits 2F, 4F, 9F, and 10F). This doctor's own treatment records do not support for his [sic] opinion the claimant would have seriously limited abilities with regard to most mental abilities and aptitudes needed to do unskilled, semi-skilled and skilled work and she would be absent about four days per month. First, whether a claimant can engage in work is reserved to the Commissioner. Second, the claimant's treatment history and her testimony shows a lack of emergent care or treatment on a regular basis with a psychologist, psychiatrist, counselor, or therapist also does not appear consistent with the same. Medications were the only intervention, and the claimant even ceased taking one of those, in May 2022, (Exhibit 9F). The undersigned does not find those parts of Dr. Bertoncini's opinion persuasive as a result.
>
> Correspondingly, although the claimant complained of fatigue, primary care records noted her dyspnea on exertion was only mild, and objective examinations consistently displayed the claimant was well developed and oriented to time, place, person and situation with normal tonsils, a normal thyroid gland, a regular heart rate and rhythm without murmurs, gallops or rubs, a normal gait, an appropriate mood and affect appropriate upon examination (Exhibits 2F, 4F, 9F, and 10F).

> Nevertheless, as the claimant testified when seated she was not short of breath, she has been limited to work at the sedentary exertional level. (Exhibits 2F, 4F, 9F, 10F, and testimony), and also limited to occasional exposure to fumes, dusts, odors, gases, and poor ventilation, so as not to exacerbate her symptoms. Also, the medical evidence of record does not support Dr. Bertoncini's opinion she would be absent about four days per month either. The only intervention for the claimant's fatigue also only being a low-dose thyroid medication also does not appear consistent with the same, but as the claimant testified when seated she was not short of breath, she has been limited to work at the sedentary exertional level. (Exhibits 2F, 4F, 9F, 10F, and testimony). As a result, the undersigned does not find Dr. Bertoncini's opinion persuasive.

(R. 19-20).

A review of the medical records cited by the ALJ show that these records do not support Dr. Bertoncini's opinion that Leichtman was severely limited. Rather, the treatment records show that examinations were generally normal, with normal heart rate and rhythm, breath sounds, and gait, appropriate mood and effect, and orientation as to person, place, and time. (R. 314-15, 317-18, 321-22, 424, 429-30, 472-73, 479-80, 488-89). Therefore, the ALJ reasonably found that Dr. Bertoncini's opinion was not supported by his own treatment records, or consistent with the record as a whole, and there is no basis for remand on this issue.

## 2. The ALJ's Evaluation of Leichtman's COVID Symptoms

Leichtman claims that the ALJ failed to properly evaluate her long-COVID symptoms. Leichtman makes a distinction between a COVID infection, which is a short-lived impairment, and long-COVID, which can persist for many months after the initial infection is no longer present. The gist of Leichtman's argument seems to be that the ALJ did not give deference to Leichtman's symptom reports and that this is reversible error. The record is clear that the ALJ repeatedly discussed Leichtman's long-COVID in the Decision, and also discussed the reported symptoms. (R. 16, 17, 18, 20, 21, 22). The ALJ found that Leichtman's long-COVID was not as severe as she alleged, citing to the medical evidence showing normal physical examinations and continued

reports of improvement. (R. 16-23, 315, 424, 429, 472, 479, 482, 485, 488, 519). Additionally, the ALJ reasonably found that Leichtman's allegations of disabling long-COVID symptoms were undermined by evidence that the symptoms did not preclude her from performing multiple activities of daily living, such as cleaning, cooking, doing laundry, shopping and managing her finances. (R. 14-15, 226-32, 238-43). Thus, there is no basis for remand on this point.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on August 15, 2024.

/s/Holly A. Brady  
CHIEF JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT